LEONARD et al. v. CROCKER WHEELER CO.

(Circuit Court, D. New Jersey. November 28, 1903.)

1. PATENTS—CONSTRUCTION OF LICENSE.

A license executed by the owner of a number of patents granted to defendant the right to "make, use, sell, and practice for the regulation or control of dynamo electric machinery for the purpose, except respecting patent No. 478,344, of regulating or controlling electric motors of its own manufacture, * * * any of the inventions aforesaid." *Held,* that such license did not include the device of patent No. 478,344, especially in view of the fact that such construction was placed on the contract by both parties for a number of years.

In Equity. Suit for infringement of patent. On special plea setting up license contract.

C. V. Edwards and Clarence E. Mehlhope, for complainants.

Wm. N. Cohen, Thomas Ewing, Jr., and Herbert Noble, for defendant.

KIRKPATRICK, District Judge. This bill is filed by the Bullock Electric Manufacturing Company and Henry Ward Leonard for infringement of letters patent of the United States No. 478,344, issued July 5, 1892, to H. Ward Leonard, of which the Bullock Company claims to be the exclusive licensee. The defendant has filed a special plea setting up a prior license to manufacture and use the device described in said patent, and has introduced in evidence an agreement, made between Leonard, the patentee, and itself, dated May 5, 1896. The agreement under which it claims such license is set out at length, and in these words:

"The said H. Ward Leonard grants to the said Crocker Wheeler Company a non-exclusive, non-assignable license without limitation condition or royalty to be paid by it or the purchasers of the apparatus, except as hereinafter specified, to make, use, sell and practice for the regulation or control of dynamo electric machinery for the purpose, except respecting patent No. 478,344, of regulating or controlling electric motors of its own manufacture and for no other purpose except as hereinafter provided in section marked 1 page 4 throughout the United States and the territories thereof any of the inventions aforesaid whether assigned by the Crocker Wheeler Company to the said Leonard or already owned by him, the said license being given under the aforesaid application and patents and any patents reissued which may be hereafter granted upon said inventions or any of them for the full term or terms of said patents, reissues or extensions."

The rights of the parties depend upon the interpretation given to this agreement, and the controversy turns upon the proper meaning of that part of the granting clause which reads as follows: "For the regulation of dynamo electric machinery for the purpose except respecting patent No. 478,344 of regulating motors of its own manufacture." In construing this clause of the agreement we must consider it as a whole, and gather, if we can, the intention of the parties. It will be observed, by an examination of the agreement as originally drawn, that, after reciting that Leonard was the owner or patentee of certain devices for controlling the current of electric generators, among which devices was enumerated patent No. 478,344 (the one in dispute), it grants to Crocker Wheeler Company a license to make,

use, sell, and practice for the regulation or control of dynamo electric machinery for the purpose of regulating or controlling electric motors, * * * any of the inventions aforesaid. There is no doubt that, as so drawn, patent No. 478,344 was included in the license as one of the "inventions aforesaid." What, then, if the intention were to have it included, was the object of inserting the words "except respecting patent No. 478,344"? The complainants contend that the exception applies to the entire granting clause, and as qualified by the entire agreement, so that a license is granted to the defendants as to all the patents and applications enumerated therein, excepting patent No. 478,344, as to which no license is granted. The defendants, on the other hand, insist that the exception applies only to a particular part of the agreement, and thereby grants a broad license under No. 478,344 and a restricted license under the other patents. In this latter view the court cannot concur, because, so interpreted, the exception will not harmonize with the rest of the agreement, as it does when applied to the grant.

In view of the ambiguity of the contract, the complainants have introduced evidence to show the construction put upon the contract by the defendants after its execution, the communications which took place between the complainants and defendants herein prior to the acquisition by the Bullock Company of the exclusive license to the patent in suit, and what acts have been done by the defendants, or uses they have made of this alleged license of the patent in suit. This testimony shows that Mr. Bullock, of the complainant company, prior to the purchase from Leonard of the exclusive right, inquired of Dr. Wheeler, president of the defendant company, whether the Crocker Wheeler Company had a license to operate or manufacture under the Ward Leonard multiple voltage patents, and that Dr. Wheeler replied that they had never secured a license to operate under this patent. Dr. Wheeler further said that when his company had treated with Leonard for rights to operate under his other patents this one patent, No. 478,344, was excluded, and that they were consulting and negotiating with Leonard at that time for the right to use his multiple voltage patent. The testimony further shows that during the years from 1899 to 1901 the defendant company was trying to purchase from Leonard a license under this patent in suit, and offered Leonard for execution a form of license which recited the fact that Leonard had the right to grant the same. These negotiations were carried on at least seven years after the agreement was entered into, and during all that time it had never been suggested by the defendant that patent No. 478,344 was included in the grant contained therein. It was in 1902, when the complainant the Bullock Company acquired its exclusive right to the use of the patented device, and it was in 1901 that the defendant company informed the complainant company, after inquiry by the complainants, that they, the defendant company, had no rights to or under this patent; whereupon, and after such inquiry and information, the complainant company did obtain from Leonard its exclusive license. Up to this time not only had the defendant company denied to the complainant company their possession of or right to a license to use this patent, but they had not used or practiced the

same under any claim of right or otherwise. From these facts it is apparent that the construction placed upon the agreement by the defendants from the time of its execution until 1901 was that it was not intended to convey any license under patent No. 478,344, but that it was excepted from the grant, and that the defendants under the agreement acquired no rights therein. Dr. Wheeler, who acted for the defendant company in the execution of the contract and throughout all negotiations relating thereto, expressly disclaimed all rights under the agreement to a license under the patent in suit. On the whole case presented the court is of the opinion that no license for the use of this patent in suit passed to the defendant company by the agreement set up in its plea, and that the same must be overruled.

The evidence presented on the question of invalidity, noninvention, and anticipation of the patent in suit is inadmissible under the pleadings, and will not be considered at this time.

The defendant is given leave to file such answer as it may be advised on or before the rule day in January next.